# CHRISTOPHER BEDARD *v.* WESTON MOTORS, LLC, ET AL.
## (AC 31345)

DiPentima, Beach and Alvord, Js.*

Argued March 9—officially released June 15, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Jack M. Bassett*, for the appellants (defendants).

*Houston Putnam Lowry*, with whom was *Julie A. Morgan*, for the appellee (plaintiff).

*Opinion*

BEACH, J. In this entry and detainer action, the defendants, Weston Motors, LLC, Scott Bird and Sean Hermann, brought this appeal, challenging the trial court's judgment in favor of the plaintiff, Christopher Bedard. The defendants argue that the court improperly found that they had violated General Statutes § 47a-43.[1] We agree and, accordingly, reverse the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant. On February 2, 2009, the plaintiff, as sublessee, and Weston Motors, LLC, as sublessor through its member-manager, Bird, entered into

---

[1] General Statutes § 47a-43 (a) provides: "When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

a sublease for premises located at 110 Pent Highway in Wallingford. The premises consisted of several automobile bays and some office space. The plaintiff and Bird expected that they would both operate their separate individual businesses on the premises. Hermann, a mechanic, sometimes worked for the plaintiff and sometimes worked for Weston Motors, LLC.

On April 28, 2009, the plaintiff, Bird and Hermann engaged in a heated exchange that resulted in the plaintiff becoming extremely angry. As a result of the plaintiff's ongoing outburst and allegedly due, at least in part, to the fact that the plaintiff had at least one firearm on the premises, Bird telephoned the Wallingford police department. Bird informed the police of the situation and of his fear that the plaintiff might use a gun. When the police arrived on the scene, they arrested the plaintiff. The plaintiff subsequently was charged with breach of the peace in the second degree and threatening in the second degree.

After the plaintiff was booked and released, he returned, apparently on the same day, to the premises with a friend to retrieve some of his belongings and his dog. The plaintiff eventually was permitted to enter the premises to remove a few of his belongings and his dog.[2] On May 7, 2009, the plaintiff appeared in court in Meriden in response to the criminal charges. The court, *Gould, J.*, ordered the plaintiff to have no contact with Bird or Hermann, except as was necessary to litigate the action.

On May 1, 2009, the plaintiff filed a verified complaint alleging that the defendants had violated § 47a-43. In its memorandum of decision, the court, *Abrams, J.*,

---

[2] A significant number of the plaintiff's items remained on the premises after the date of the plaintiff's arrest. On June 10, 2009, per an interim order of the court, the parties, accompanied by an attorney, met at the premises and transferred to the plaintiff those items that they agreed belonged to him.

found that the plaintiff possessed the premises at issue and was forcibly deprived of his right to possess the premises.[3] Specifically, the court determined that "[t]he critical question is whether [the plaintiff's] arrest and the resulting 'no contact' order constitute the forcible deprivation of his right to occupy the premises. . . . Based on the totality of the circumstances, the court concludes that to find otherwise would place [the plaintiff] in a wholly untenable position. While it may technically be the order of the court rather than the acts of the defendants that serves to bar [the plaintiff] from [the] premises he rightfully occupied, it was . . . Bird's act of contacting the police that set this chain of events in motion. As a result, the court finds that [the plaintiff] has been forcibly deprived of his right to occupy the premises." (Citation omitted.) The court expressly stated that it made no finding as to whether Bird was justified initially in contacting the police. The court did not find that the plaintiff had proved that an entry and detainer had occurred on April 28. Rather, the court found that the plaintiff's arrest *and the court's subsequent no contact order* formed the basis for an entry and detainer. As a result, the court ordered the defendants to restore the plaintiff to possession of the premises "immediately upon the lifting or modification of Judge Gould's 'no contact' order."

The defendants claim that the court improperly held them liable pursuant to § 47a-43. They argue that the removal of the plaintiff from the premises by the police and the court's subsequent no contact order, which effectively kept him off the premises, do not constitute a proper basis for finding that the defendants had forcibly

[3] Although the court did not specify which subdivision of § 47a-43 (a) the defendants violated by taking the aforementioned acts, it appears that the court relied on subdivision (2), as it is the only part of the statute that explicitly requires dispossession "with force . . . ." General Statutes § 47a-43 (a).

deprived the plaintiff of his right to occupy the premises.

To the extent that the defendants' claim of error pertains to the court's factual findings, we review those findings under the clearly erroneous standard. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Fleming* v. *Bridgeport*, 284 Conn. 502, 511, 935 A.2d 126 (2007). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007).

"The process of forcible entry and detainer, provided by our statutes, is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, and who has been forcibly deprived of it, may be restored to the possession and enjoyment of that property. This process is for the purpose of restoring one to a possession which has been kept from him by force. . . . For a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry. . . . Section 47a-43 was made to protect a person in such possession . . . from disturbance by any but lawful and orderly means." (Citation omitted; internal quotation marks omitted.) *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 108, 523 A.2d 888 (1987).

In *Fleming* v. *Bridgeport*, supra, 284 Conn. 502, the plaintiff daughter of the tenant brought an action, pursuant to § 47a-43, against, inter alios, the Dixons, who

leased a second floor apartment of their multifamily house to her father. The daughter, who was living in the apartment with her father, had caused disturbances during the time she stayed at the apartment. On one such occasion, the Dixons telephoned the police and complained of scuffling, yelling, screaming and swearing by the daughter in the second floor apartment. She was removed from the premises by the police. The trial court concluded that she had not established a violation of § 47a-43 by the Dixons. The Supreme Court concluded that despite her actual possession and subsequent removal, the record supported the conclusion that the Dixons did not violate the statute. Id., 514. The court noted that "Susie Dixon testified, and the trial court found the testimony credible, that she had telephoned the police because there were sounds of scuffling, screaming and swearing coming from the apartment and that she had wanted the [daughter] removed because of that disturbance. . . . There is no evidence in the record to demonstrate that Susie Dixon's claim of disturbance was a pretext to use the police to circumvent the summary process otherwise required under § 47a-43. . . . The [daughter] does not contend, nor could she under our case law, that the entry and detainer statute protects a possessor from being removed from the premises by the police in accordance with the criminal law for breach of the peace. See *Daddona* v. *Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 257, 550 A.2d 1061 (1988) (noting that provisions like § 47a-43 were designed to protect . . . *peaceable possession* . . . from disturbance . . . and to protect the peace of the neighborhood . . . ." (Emphasis in original; internal quotation marks omitted.) *Fleming* v. *Bridgeport,* supra, 514–15. The Supreme Court concluded that the Dixons did not violate § 47a-43 (a) (2) by using the police as a "strong hand" to dispossess the daughter. Id., 516.

In the present case, the court erroneously concluded that the plaintiff's arrest and Judge Gould's subsequent no contact order properly formed the basis for a finding of an entry and detainer. The court found that although Judge Gould's order rather than the acts of the defendants barred the plaintiff from the premises, it was Bird's act of contacting the police that set this chain of events in motion. The record reveals that Bird testified that the plaintiff, who had at least one gun on the premises, was screaming and threatening to kill certain individuals and that Bird became apprehensive about his physical well-being and telephoned the police.[4] There is no evidence in the record, and the court did not find, that Bird's complaint to the police was a pretext to circumvent the summary process required under § 47a-43. Absent such a pretext, the plaintiff's actions in causing a disturbance, not Bird's act of telephoning the police, set in motion the chain of events leading to the plaintiff's arrest and the subsequent no contact order. It cannot be said under our case law that the entry and detainer statute protects a possessor from being removed from the premises by the police in accordance with the criminal law for breach of the peace and from subsequently having a no contact order issued against him. See id., 514–15. Section 47a-43 protects *peaceable possession* from disturbance. *Daddona* v. *Liberty Mobile Home Sales, Inc.*, supra, 209 Conn. 257. The defendants did not violate § 47a-43 by effectively using the police, and subsequently the court's no contact order, as a "strong hand" to dispossess the plaintiff.[5] See *Fleming* v. *Bridgeport*, supra, 284 Conn. 516.

---

[4] From the court's finding of fact, it is apparent that the court credited this portion of Bird's testimony.

[5] The court made no decision, the parties make no claim and we accordingly make no determination as to whether any other acts of the defendants possibly may have constituted a violation of § 47a-43.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.